UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHANDLER STALVEY, *et al.*, | ) | Case No.: 1:10 CV 1729 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| NVR, INC., d/b/a Ryan Homes, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendant NVR Inc. d/b/a Ryan Homes' ("Defendant" or "NVR") Motion to Dismiss Plaintiffs Chandler and Linda Stalvey's ("Plaintiffs") Amended Complaint (ECF No. 6). For the following reason, the court grants in part and denies in part Defendant's Motion.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiffs allege that on February 28, 2005, they entered into an Ohio Purchase Agreement ("Purchase Agreement") with Defendant for the purchase and sale of a yet-to-be built house. (Am. Compl., ECF No. 5, ¶ 7.) As part of the Agreement, Defendant provided them with a Topographic Survey & Improvement Plan, which was dated April 21, 2005, that did not depict information regarding wetlands on the property. (*Id*. ¶ 11.) There was also an Addendum to the Purchase Agreement ("Addendum"), which was dated February 28, 2005. (*Id*. ¶ 13.) After the Agreement was executed, Defendant commenced construction of Plaintiffs' house, which was completed in

August 2005. (*Id*. ¶ 16.) The parties closed the transaction and Plaintiffs acquired possession of the property. (*Id*. ¶ 17.)

In August 2008, Plaintiffs learned that their property might include wetlands. (*Id*. ¶ 18.) Plaintiffs undertook an investigation. On March 17, 2010, Plaintiffs learned from a report from the Army Corps of Engineers that their home had been built on or near wetlands in violation of Federal regulations and Montville Township zoning regulations. (*Id*. ¶ 23.)

Plaintiffs experienced odors in their home, which they associated with the existence of wetlands on their property. Defendant's subcontractor installed a radon pump underneath Plaintiffs' garage floor to eliminate the odor. (*Id*. ¶ 25.) Defendant's subcontractor had to dismantle portions of Plaintiffs' garage floor to install the pump, and he subsequently reinstalled those portions of the floor and applied a floor coating. (*Id*. ¶ 26.) The parties agreed that they would each pay one-half of the cost of the installation and repair. Plaintiffs paid their half and allege that Defendant never paid its half. (*Id*. ¶¶ 27-28.) Plaintiffs further allege that after the installation, their garage floor began to bubble, "causing the floor coating to be lifted up in sheets; said garage floor was wet upon removal of the floor coating, compromising the structural integrity of the garage floor." (*Id*. ¶ 29.)

## II. LEGAL STANDARD FOR MOTION TO DISMISS

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explained the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III.  LAW AND ANALYSIS

#### A.  Ohio Consumer Sales Practices Act Claim

#### 1.  Claim Regarding Existence of Wetlands

The relevant portion of the Ohio Consumer Sales Practices Act ("OCSPA") states: "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." O.R.C. §1345.02; O.R.C. §1345.03.  The OCSPA only applies to consumer transactions.  Ohio Revised Code § 1345.01(A) defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  The OCSPA does not apply to pure real estate transactions.  O.R.C. § 1345.01(A); *Brown v. Liberty Clubs, Inc.*, 543 N.E.2d 783, 785 (Ohio 1989); *Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 280, fn 13 (N.D. Ohio 2006). Defendant argues that this is a pure real estate transaction because "Plaintiffs in this case are complaining about Ryan Homes' alleged failure to disclose the presence of wetlands on their real property (Amended Complaint, ¶ 55), which is not 'an item of goods, a service, a franchise, or an intangible.' [O.]R.C. § 1345.01(A)."  (Def.'s Memo. in Supp. of Mot. to Dismiss, ECF No. 6-1, at p. 7.)  Plaintiffs argue that while the OCSPA does not apply to "pure" real estate transactions, it "is applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services and the transfer of real property." *Colburn v. Baier Realty & Auctioneers*, No. 2002-T-0161, 2003-Ohio-6694, at ¶ 15 (Ohio App. 11 Dist. Dec. 12, 2003). Plaintiffs maintain that the contract to build a new home in this case, the Purchase Agreement, is a

contract for services that is governed by the OCSPA.

In *Keiber v. Spicer Constr. Co.*, 619 N.E.2d 1105, 1107 (Ohio App. 2 Dist., 1993), the court determined that the OCSPA applies to a contract to build a new house. The court reasoned:

> Although the OCSPA has been deemed not to apply to the sale of a pre-existing residence, . . . a contract to build a new home is distinguishable; a residential contract, especially when engaged in the design, construction, and sales of multiple dwellings, is a supplier of consumer-oriented services for the purpose of the OCSPA. Purchasers of one window, or a home-improvement package, or repair services for air-conditioning machinery attached to the buyer's realty, are all considered consumers under Ohio law. The fact that the consumer is also purchasing the land upon which his house will be built would not seem to make either the buyer any less a consumer or the transaction any less a consumer transaction.

*Id*. Later, the First District Court of Appeals in *Rose v. Zaring Homes*, 702 N.E.2d 952, 958 (Ohio Ct. App. 1st Dist. 1997), determined that plaintiffs'/home buyers' suit against the defendant/home builder dealt with "strictly ... real property." The home buyers claimed that defendant's salesperson represented that there would not be any development of green space north of the newly constructed home and that years later, development commenced on the green space. The court in *Rose* distinguished *Keiber* by explaining that "the consumer complaint in *Keiber* was clearly related to the construction of the house, not to the land transaction. The fact that the vendor/builder also sold land to the buyer was incidental to the holding." *Id*. at 958. The *Rose* court further explained that the reason for extending the OCSPA to new home construction is "the buyer's lack of opportunity to inspect what he or she was getting before buying it." *Id*. In cases where plaintiffs are satisfied with the construction of the house but are dissatisfied with something related to the real property, the OCSPA does not apply to the plaintiffs' complaint. *Id*.

In this case, Plaintiffs' OCSPA claims regarding the existence of wetlands pertains only to

-5-

real property. Plaintiffs are not alleging that they are dissatisfied with the construction of the house; rather, Plaintiffs allege that they were purposely not informed about the presence of wetlands on the property. Thus, this case is similar to *Rose* where the plaintiffs were dissatisfied with the fact that construction began on green space adjacent to their property, as Plaintiffs in this case are dissatisfied with a representation about the nature of their real property. Relying on the same reasoning as the *Rose* court, this court finds that Plaintiffs' claim cannot be brought pursuant to the OCSPA because it pertains to purely real property. *Rose*, 702 N.E.2d 952 at 958.

### 2. Claim Regarding Installation and Repairs

Plaintiffs also allege that Defendant violated the OCSPA by "fail[ing] to properly reinstall the garage floor, compromising the structural integrity of said floor." (Am. Compl., ¶ 42.) The court in *DeLuits v. Ashworth Home Builders, Inc.*, Sl. Cop., 2009 WL 606121 (Ohio App. 9 Dist. 2009), sets out when the OCSPA can apply to certain aspects of the purchase of a home. Preliminarily, the court determined that if the transaction between the parties only involves the purchase of a home, then the OCSPA does not apply. *Id*. at * 2. Agreements relating to the purchase of an existing home can fall under the OCSPA, however, if they provide for services improving the property. *Id*. at * 3. Nonetheless, the court, relying on *Brown*, 543 N.E.2d at 783, explained that "the [O]CSPA still would not apply to the sale of the existing home but would only apply to that portion of their agreement that involved the construction of additional structures and other provision of services." *Id*. Furthermore, the court determined that home warranty or repair agreements executed in connection with the sale of an existing house do not fall within the OCSPA. *Id*.

In this case, the repair agreement was an agreement for services. It was not "in connection

with the sale of an existing house" because the repair agreement was undertaken approximately three years after the purchase of the home. (Am. Compl., ¶¶ 17, 27.) As such, the OCSPA applies to this claim.

However, Defendant also argues that even if the OCSPA applies, Plaintiffs did not plead the elements of a claim under OCSPA. Defendants argue that Plaintiffs failed to plead that Defendant committed an unfair or deceptive act or practice in connection with a consumer transaction. O.R.C. §1345.02(A); *e.g., Patterson v. Rite Aid Corp Hdqtrs.*, 1:10 CV 589, 2010 WL 3781617, * 7 (N.D. Ohio Sept. 22, 2010) ("[T]he Court finds that Plaintiffs failed to state a claim that Defendant violated the Ohio Consumer Sales Practices Act" as the plaintiffs conceded that the defendant did not engage in a deceptive act.).

An act is deceptive if any of the following exist:

> (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
> (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
> (3) That the subject of a consumer transaction is new, or unused, if it is not;
> (4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;
> (5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;
> (6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;
> (7) That replacement or repair is needed, if it is not;
> (8) That a specific price advantage exists, if it does not;
> (9) That the supplier has aسponsorship, approval, or affiliation that the supplier does not have;
> (10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

O.R.C. §1345.02(B)(1-10).

Plaintiffs only allege that Defendant has yet to pay half of the cost of the installation of a radon pump and the repairs to the garage floor to the subcontractor, as agreed to by the parties. Plaintiffs also assert that the work was performed poorly. (Am. Compl., ¶ 42.) These allegations do not amount to an unfair or deceptive act because Plaintiffs do not allege that Defendant promised anything that would fall within Ohio Revised Code §1345.02(B)(1-10). Therefore, the court hereby dismisses Counts I and II of the Amended Complaint.

### B. Breach of Contract Claim

Plaintiffs allege in Count III that Defendant materially breached the Purchase Agreement because it represented that no wetlands existed on the property, yet wetlands are on the property. (Am. Compl., ¶¶ 52-58.) The issue here is whether the Addendum to the Purchase Agreement created a contractual obligation. In the Addendum, Defendant did not check a box that would have added a "wetlands addendum." (Addendum, ECF No. 5-1, at p. 9.) Plaintiffs allege that the Addendum created a duty on the part of Defendant to disclose the existence of wetlands. (Am. Compl.,¶ 15.) Defendant argues that the Addendum does not impose such an affirmative disclosure obligation on Defendant. (Def.'s Memo. in Supp. of Mot. to Dismiss, ECF No. 6-1, at p. 7.) The parties agreed that the Purchase Agreement was and is the "entire agreement" between them, and that there are no "prior or contemporaneous representations, promises or terms." (Purchase Agreement, ¶ 25.) Furthermore, Paragraph 11(b) of the Purchase Agreement is controlling here; it expressly states that the property is sold "subject to" easements, encumbrances and restrictions, including those that may be made "before or after execution of this Agreement." (Purchase Agr., ¶ 11(b).)

The Addendum deals with several matters not dealt with in the body of the contract. They are: a homeowners association addendum, a landscape addendum, a storm water management addendum, a common driveway addendum, a plat recordation addendum, a well water addendum, a septic addendum, and a wetlands addendum. It appears that if a matter covered by a particular addendum is applicable, the seller must check the box at the beginning of that addendum and that the purchaser must initial at the end of the addendum.

For example, the homeowners association addendum is both checked and initialed because the "Purchaser acknowledges that the Property is part of the Cobblestone Homeowners Association . . . ." Likewise, the Landscape Addendum is checked and initialed because the "Purchaser shall be responsible, at Purchaser's sole cost and expense, for fully landscaping the Lot . . . ." By contrast, the well water addendum is not checked or initialed, which seems to suggest that the language of the addendum, which states that "[t]he Property will be served by a private well water system," is not applicable. Similarly, the common driveway addendum is not checked or initialed, which might indicate that the language of that addendum, which states that "[t]he Property subject to the Agreement . . . requires a common driveway," is not applicable. The wetlands addendum is also not checked or initialed, which might indicate that the language of that addendum, which states that the "Purchaser acknowledges that the Lot contains 'wetlands'," is not applicable. (*See* Addendum, ECF No. 5-1.)

While Defendant maintains that the failure to check the wetlands addendum means that the parties did not contract in any manner in regard to wetlands, the contract is clearly ambiguous on this point. It might be that just as one could read the failure to check the well water addendum as stating that the property did not have a well water system, the failure to check the wetlands

addendum might be read to suggest that since there are no wetlands, that addendum does not apply.

The wetlands addendum is ambiguous as it is subject to more than one interpretation. *Kademenos v. Harbour Homeowners Assn.*, --- N.E.2d ----, 2011 WL 941348 * 3 (Ohio App. 6 Dist. Mar. 18, 2011) (citing *Wolf v. Miller Diversified Consulting, L.L.C.*, 2008 WL 726535, ¶ 24 (Ohio App. 6 Dist. Mar. 14, 2008) ("Contractual language is ambiguous only when its meaning cannot be derived from the four corners of the agreement, or when the language is susceptible of two or more reasonable interpretations."). Plaintiffs have stated a claim under one interpretation of the contract. Therefore, the court denies Defendant's Motion to Dismiss as to Count III of the Complaint.

### C. Fraud Claim

Plaintiffs allege that Defendant committed fraud by failing to inform them about the existence of wetlands and by withholding information about wetlands.  (Am. Compl., ¶ 65.) Defendant argues that Plaintiffs' fraud claim should be dismissed for three reasons: (1) fraud terms cannot be interjected into the contract; (2) Plaintiffs cannot assert an alleged breach of a written contract as the basis for a claim of fraud; and (3) Plaintiffs have not alleged sufficient facts to support the elements of fraud.  (Def.'s Memo. in Supp. of Mot. to Dismiss, ECF No. 6-1, at pp. 9-11.)

Plaintiffs must allege that Defendant owed them a duty that is separate from the terms of the contract.  *See, e.g., Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261 (9th Dist. 1996); *Battista v. Lebanon Trotting Ass'n.*, 538 F.2d 111, 117 (6th Cir. 1976) ("A tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed."); *Infocision Mgmt. Corp. v. Found. for Moral Law*

-10-

*Inc.*, Sl. Cop., 5:08 CV 1342, 2009 WL 2244166, * 4 (N.D. Ohio Jul. 27, 2009) ("'The tort liability of parties to a contract arises from the breach of some positive legal duty of good faith imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contractual obligation.'" (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). In this case, Plaintiffs argue, without citing case law in support, that the fraud claims "are separate from and independent of the breach of contract claim because: (1) fraud in the inducement is antecedent to the formation of contract, and (2) the fraudulent misrepresentation came during the performance of the contract, a misrepresentation that was unknown to Plaintiff[s] until March 2010." (Pls.' Opp. to Mot. to Dismiss, ECF No. 10, at pp. 13-14.)  Plaintiffs further argue that the remedies for breach of contract and for fraud in the inducement are different; for breach of contract, it is the value of the bargained-for benefit, and for fraud it is rescission.  The Amended Complaint states in relevant part:

> 61. On or about February 28, 2005, Defendant RYAN HOMES concealed and/or failed to inform Plaintiffs that the property which they purchased contained wetlands, to which Defendant RYAN HOMES knew or had reason to know, actual, constructive or otherwise.
> 62. Defendant RYAN HOMES represented that the property which it sold to Plaintiffs did not contain wetlands, which was, in fact, not true or accurate.
> 63. Specifically, under the Agreement, as provided in the Ohio Addendum to Purchase Agreement, Defendant RYAN HOMES failed, intentionally, recklessly or otherwise, to indicate that the property which it sold to Plaintiffs contained wetlands. . . .
> 65. Defendant Ryan Homes' failure to inform and/or withhold information from Plaintiffs regarding the existence of wetlands in the property, or, in the alternative, Defendant RYAN HOMES' conscious disregard of the truth of the existence of wetlands in the property, was a misrepresentation of a material fact.
> 66. Such representations, concealment and/or failure to disclose were intended to mislead Plaintiffs upon which Plaintiffs justifiably relied to their detriment in purchasing the property.

Paragraph 63 shows that Plaintiffs base their fraud claim on Defendant's alleged failure to indicate on the Purchase Agreement that the property contained wetlands. This is the same action Plaintiffs allege violates the Purchase Agreement itself. Therefore, the court finds that Plaintiffs have not alleged that Defendant violated a duty separate from that allegedly created by the contract between the parties. As the court held in *Battista v. Lebanon Trotting Ass'n*., 538 F.2d 111, 117 (6th Cir. 1976), "[a] tort exists only if a party breaches . . . a duty which would exist even if no contract existed."

Even if the court had found that Plaintiff had pled a separate basis for its fraud claim, Plaintiff did not allege any facts to show that Defendant had prior knowledge of the wetlands. An element of fraud in the inducement or fraudulent misrepresentation is that Defendant must have knowledge that it is making a false representation. *Bradford v. B & P Wrecking Co., Inc.*, 872 N.E.2d 331, 343(Ohio 6th Dist., Lucas, Apr. 13, 2007) (quoting *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709 (Ohio 1987)) (A representation must be "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred."). Plaintiffs allege that Defendant knew or should have known about the existence of wetlands on Plaintiffs' property, but does not allege any facts that would support this allegation. Mere conclusory allegations are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555; see also Fed. R. Civ. P. 9(b) (requiring that fraud be pled with "particularity"). Therefore, the court hereby dismisses Plaintiffs' fraud claim, Count IV, of the Amended Complaint.

### D. Emotional Distress Claim

Defendant argues that Plaintiffs' claims for negligent and intentional emotional distress must be dismissed because Plaintiffs have not alleged the elements of either tort.

### 1. Negligent Infliction of Emotional Distress

The tort of negligent infliction of emotional distress is limited to cases in which the plaintiff "either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Soriano v. State Farm Fire & Cas. Co.*, No. 3:07 CV 1148, 2008 WL 2079409, *7 (N.D. Ohio May 15, 2008) (citing *Bunger v. Lawson Co.*, 696 N.E.2d 1029, 1032 (Ohio 1998), and quoting *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995)).  Plaintiffs do not allege either of these scenarios occurred in its Amended Complaint.  The court hereby dismisses this claim.

### 2. Intentional or Reckless Infliction of Emotional Distress

In order to prevail on the tort of intentional infliction of emotional distress, Plaintiffs must allege and prove that:

> (1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Garcia v. ANR Freight System, Inc.*, 942 F.Supp. 351, 359 (N.D.Ohio 1996) (quoting *Tschantz v. Ferguson*, 647 N.E.2d 507, 513 (Ohio App. 8th Dist. 1994)).  Defendant argues that the alleged failure to disclose the existence of wetlands is not "extreme" or "outrageous."  Defendant further argues that Plaintiffs did not allege any severe emotional distress.

In response, Plaintiffs rely on *Kishmarton v. William Bailey Constr., Inc.*, 754 N.E.2d 785, syllabus, ¶2,(Ohio 2001), and *Walter v. Marion Production Credit Association*, 537 N.E.2d 676 (Ohio App. 3d Dist. 1987).  In *Kishmarton*, 754 N.E.2d at 788, the court

> adopt[ed] Section 353 of the Restatement of Law 2d, Contracts (1981)

> and declare[d] that when vendee's claim for breach of an implied duty to construct a house in a workmanlike manner is successful, recovery for emotional distress damages will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional distress was a particularly likely result.

The plaintiff alleged that the defendant breached the service contract by performing the construction of a house in an unworkmanlike manner, and this caused plaintiff to suffer emotional distress. The *Kishmarton* court determined that damages for emotional distress were not appropriate. In fact, the court quoted Comment *a* to Section 353 of the 3rd Restatement of Torts, which states: "[d]amages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure." *Id.* Plaintiffs in this case have not alleged that the Purchase Agreement itself or breach of the Purchase Agreement was likely to result in emotional distress. Plaintiffs did allege that they spent their "life savings" on the home, but this alone does allege the kind of emotional distress that is legally cognizable. (Am. Compl., ¶ 70.)

As to *Walter*, 537 N.E.2d at 681, the question of whether or not Walter suffered serious emotional distress was found to be a question for the jury because Walter had produced medical evidence that he was suffering from depression and anxiety. In that case, there was evidence that a credit association placed a lien on Walter's farm equipment after saying it would not and that the credit association purposely sent correspondence about the lien to an incorrect address despite knowing Walter's correct address. *Id.* *Walter* is inopposite as it did not deal with pleading requirements of an emotional distress claim.

Given that Plaintiffs have not alleged that the contract itself should have foreseen likely emotional distress, have not alleged specific facts in support of its contention that not representing the existence of wetlands was "extreme" or "outrageous," and have not alleged that Plaintiffs'

-14-

emotional distress manifested itself in a medically cognizable manner, Plaintiffs have failed to allege the tort of emotional distress in their Amended Complaint.  The court hereby dismisses Count V of the Amended Complaint.

### E.  Unjust Enrichment

In a footnote in their Opposition to the Motion to Dismiss, Plaintiffs state:

> Plaintiffs seek leave to add, inter alia, an unjust enrichment claim based on the parties' lack of meeting of the minds regarding the wetlands. A meeting of the minds as to the essential terms of the contract is a requirement for enforcing the contract. *Mantia v. House*, 178 Ohio App.3d 763 (2nd Dist., Montgomery, Oct. 10, 2008), citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶16. The essential term in this case is the representation by Ryan Homes that the lot did not contain wetlands. If Ryan Homes did not know in good faith and fact that the lot did not contain wetlands, there is no contract. If Ryan Homes had prior knowledge of the wetlands, it is fraud in the inducement, and the agreement is voidable by Plaintiff[s]. If Plaintiffs do not avoid the contract, their [sic] are entitled to damages for fraud. If Plaintiffs assent to the validity of the contract, Ryan Homes is in breach which entitle[s] them to damages.

(Pls.' Opp. to Mot. to Dismiss, ECF No. 10, at p. 12, fn 5.)  The court will not permit Plaintiffs to allege an unjust enrichment claim when there is no dispute that a contract between the parties existed.  Furthermore, as explained in Section (B) above, the contract did not require Defendant to disclose the existence of wetlands on the property.

### IV.  CONCLUSION

For the above-mentioned reasons, the court hereby grants in part and denies in part Defendant's Motion to Dismiss Plaintiffs' Amended Complaint.  (ECF No. 6).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE

-16-

UNITED STATES DISTRICT COURT

August 9, 2011