UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHANDLER STALVEY, *et al.*, | ) | Case No.: 1:10 CV 1729 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| NVR, INC., d/b/a Ryan Homes, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending in the above-captioned case is Plaintiffs' Motion to "Alter or Amend Judgment, for Relief from Judgment or Order" under Fed. R. Civ. P. 59(e) & 60(b)(6) and for Leave to File a Second Amended Complaint. (ECF No. 24.) For the following reasons, the court denies in part and grants in part Plaintiffs' Motion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Chandler Stalvey ("Mr. Stalvey") and Linda Stalvey ("Mrs. Stalvey) (collectively, "Plaintiffs" or the "Stalveys") allege that on February 28, 2005, they entered into an Ohio Purchase Agreement ("Purchase Agreement") with Defendant NVR, Inc. ("Defendant" or "NVR") for the purchase and sale of a yet-to-be built house. (Am. Compl. ¶ 7, ECF No. 5.) As part of the Agreement, Defendant provided them with a Topographic Survey & Improvement Plan, dated April 21, 2005, that did not depict the presence of wetlands on the property. (*Id*. ¶ 11.) There was also an Addendum to the Purchase Agreement ("Addendum"), which was dated February 28, 2005. (*Id*.

¶ 13.) After the Agreement was executed, Defendant commenced construction of Plaintiffs' house, which was completed in August 2005.  (*Id*. ¶ 16.)  The parties closed the transaction and Plaintiffs acquired possession of the property.  (*Id*. ¶ 17.)

In August 2008, Plaintiffs learned that their property might include wetlands.  (*Id*. ¶ 18.) Plaintiffs undertook an investigation.  On March 17, 2010, Plaintiffs learned from a report from the Army Corps of Engineers that their home had been built on or near wetlands in violation of Federal regulations and Montville Township zoning regulations.  (*Id*. ¶ 23.)

Plaintiffs experienced odors in their home, which they associated with the existence of wetlands on their property.  Defendant's subcontractor installed a radon pump underneath Plaintiffs' garage floor to eliminate the odor.  (*Id*. ¶ 25.)  Defendant's subcontractor had to dismantle portions of Plaintiffs' garage floor to install the pump, and he subsequently reinstalled those portions of the floor and applied a floor coating.  (*Id*. ¶ 26.)  The parties agreed that they would each pay one-half of the cost of the installation and repair.  Plaintiffs paid their half and allege that Defendant never paid its half.  (*Id*. ¶¶ 27-28.)  Plaintiffs further allege that after the installation, their garage floor began to bubble, "causing the floor coating to be lifted up in sheets; said garage floor was wet upon removal of the floor coating, compromising the structural integrity of the garage floor." (*Id*. ¶ 29.)

On July 26, 2010, Plaintiffs filed suit against NVR, Inc. and several John Doe Defendants (collectively, "Defendants") in the Medina County Common Pleas Court.  (Compl., ECF No. 1-1.) Defendants removed the action to this court on August 6, 2010.  (Notice of Removal, ECF No. 1.) On September 9, 2010, Plaintiffs filed their First Amended Complaint, asserting five claims for relief: Count One, Unfair or Deceptive Acts or Practices in violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio R.C. § 1345.02; Count Two, Unconscionable Acts or Practices in

violation of the OCSPA, Ohio R.C. § 1345.03; Count Three, Breach of Contract; Count Four, Fraud or Misrepresentation; and Count Five, Intentional, Reckless and/or Negligent Infliction of Emotional Distress. (Am. Compl., ECF No. 5.) On September 20, 2010, Defendant NVR, Inc. filed their Motion to Dismiss Plaintiffs' Amended Complaint. (ECF No. 6.)

On August 9, 2011, this court granted in part NVR's Motion to Dismiss, dismissing all claims except for Plaintiffs' breach of contract claim. On September 6, 2011, Plaintiffs filed the Motion currently pending before the court, seeking reconsideration of this court's dismissal of Plaintiffs' OCSPA and fraud claims and leave to file a Second Amended Complaint. (ECF No. 24.) Plaintiff filed the proposed Complaint separately, and not as an attachment to their Motion. (Proposed Second Am. Compl., ECF No. 25.) Defendants filed their Opposition on September 22, 2011 (Def.'s Opp'n, ECF No. 26), and Plaintiffs filed a Reply on October 6, 2011. (Pls.' Reply, ECF No. 27.)

## II. LEGAL STANDARDS

### A. Standard for Reconsideration

While Plaintiffs have moved for relief pursuant to Fed. R. Civ. P. 59(e) and 60(b), district courts "have inherent power to reconsider interlocutory orders . . . before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1283 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943)); *see also Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004) (noting courts also have authority under Fed. R. Civ. P. 54(b) to "reconsider interlocutory orders and to reopen any part of a case before entry of final judgment"). This includes the power to modify interlocutory orders. *Mallory*, 922 F.2d at 1283 (citing *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922).) Traditionally, "courts will find

justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. App'x at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). An order granting in part and denying in part a Rule 12(b)(6) motion to dismiss is interlocutory in nature. *See Turi v. Main Street Adoption Servs., LLP*, 633 F.3d 496, 500–501 (6th Cir. 2011).

### B. Amendments to Pleadings under Rule 15

Under Fed. R. Civ. P. 15(a)(1), a party "may amend its pleading once as a matter of course" within the prescribed time period. Rule 15 further provides that in "all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that in the absence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should be freely granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion for leave to amend may be denied under the futility ground if the court concludes that the pleading as amended would not survive a 12(b)(6) motion to dismiss. *See Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (citing *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)). Thus, the court examines the legal sufficiency of the plaintiff's amended pleading under the standard articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009).

### III. LAW AND ANALYSIS

#### A. Plaintiffs' Motion for Reconsideration

Plaintiffs seek reconsideration of this court's prior dismissal of Plaintiffs' claims for violations of the OCSPA and fraud, arguing that the court committed legal error in dismissing these two claims. The court will address each claim in turn.

##### *1. Plaintiffs' OCSPA Claims*

Ohio R.C. § 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Further, Ohio R.C. § 1345.03(A) provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction." Such unfair, deceptive, or unconscionable acts or practices by a supplier violate the OCSPA whether they occur before, during, or after the transaction. Ohio R.C. §§ 1345.02(A), 1345.03(A). Ohio R.C. § 1345.02(B) provides a non-exhaustive list of acts or practices that are deceptive. Similarly, § 1345.03(B) provides a list of circumstances that "shall be taken into consideration" in determining whether an act or practice is unconscionable.

Pertinent for the purposes of this case, the OCSPA limits the types of "consumer transactions" subject to protections of the Act. Specifically, the OCSPA defines a "consumer transaction" as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio R.C. § 1345.01(A).

In interpreting the definition of a "consumer transaction" under the OCSPA, the Ohio Supreme Court has held that "the Consumer Act has no application in a 'pure' real estate

transaction." *Brown v. Liberty Clubs, Inc.*, 543 N.E.2d 783, 785 (Ohio 1989). However, the Court has clarified that the Act *is* applicable "to the personal property or services portion of a 'mixed' transaction that also involves the sale of real estate." *Id.* Thus, applying *Brown*, Ohio courts of appeals have held that in a real estate transaction involving both the purchase of land and a contract to construct a residence, the OCSPA applies to the construction contract. *See, e.g.*, *Keiber v. Spicer Constr. Co.*, 619 N.E.2d 1105, 1106 (Ohio Ct. App. 1993); *DeCola v. Pete Wing Contracting*, No. 2009-A-0012, 2010 WL 2026066, at **8–9 (Ohio Ct. App. May 21, 2010). In extending the reach of the OCSPA to the portion of the transaction involving the residential construction, courts have reasoned that a builder constructing a new home supplies a "service" as defined under Ohio law. *See Rose v. Zaring Homes, Inc.*, 702 N.E.2d 952, 957 (Ohio Ct. App. 1997); *see also* Ohio Admin. Code. 109:4-3-01(C)(2) (defining "service" as including, *inter alia*, "the construction of a single-family dwelling unit by a supplier on the real property of a consumer").

This court previously held that "Plaintiffs' OCSPA claims regarding the existence of wetlands pertains only to real property" and are therefore not cognizable under the OCSPA. (Aug. 9, 2011 Order at p. 5, ECF No. 22.) The court likened the instant case to *Rose v. Zaring Homes*, 702 N.E.2d 952, 958 (Ohio Ct. App. 1997), wherein the court of appeals for the First District held that the consumer transaction at issue was not subject to OCSPA because plaintiffs were "entirely satisfied with the construction of their house" and their claim "was strictly about the real property-namely an alleged misrepresentation about the green space." *Id.* at 958. Because the basis of Plaintiffs' Motion is that the court erred in its application of *Rose* to the instant case, the court will discuss in greater detail the pertinent facts and legal conclusions of the *Rose* case.

In *Rose*, the plaintiffs contracted with a developer for the construction of a new home on a

specific lot in a subdivision. *Id.* 953. After the contract had been executed, the developer asked the plaintiffs to consider a different lot than the one they had purchased. *Id.* Plaintiffs claimed that they were induced to cancel their contract and sign a new contract for the purchase of the other lot based on the developer's representation "that an unimproved 'green space' would be maintained" just north of the new lot. *Id.* at 953–54. About a year after the plaintiffs had closed on the new deal, however, the developer began constructing a new house on the property that was allegedly to remain undeveloped green space. In deciding that plaintiffs could not bring their claim pursuant to the OCSPA, the court of appeals considered the import of *Keiber v. Spicer Constr. Co.*, in which the court held that the protections of the OCSPA extended to the "purchaser of a contract to build a house, even though the Act has been deemed not to apply to the mere purchase of existing real property." 619 N.E.2d at 1109. More specifically, the court held that in a mixed contract for a residential construction coupled with the purchase of land, the portion relating to the construction of the residence is a consumer transaction subject to the OCSPA. *Id.* The *Rose* court distinguished *Keiber*, noting that the gravamen of the plaintiffs' claim was a "pure real estate transaction"–namely an alleged agreement concerning the development of green space adjacent to the contracted-for property–that is "governed by the immense body of real estate law," specifically implicating Ohio's Statute of Frauds, Ohio R.C. § 1335.05. *Rose*, 702 N.E.2d at 958.

Plaintiffs argue that this court erred in its application of *Rose* to the instant case. Specifically, Plaintiffs argue that their allegations go beyond "the presence or failure to inform [them of] the existence of wetlands;" rather, they also concern the construction of the home itself in that Ryan Homes "was required to build a home that was in compliance with local zoning ordinances" and "with federal law." (Pls.' Mem. in Supp. at p. 12, ECF No. 24.) Plaintiffs maintain that the

essence of their Complaint is that the Defendants built a home that was too large for the lot in that a portion of the house encroached upon wetlands. *Id.* In their First Amended Complaint, Plaintiffs alleged that Defendants committed three "deceptive acts and practices" potentially subject to the OCSPA: Defendants (1) failed to "delineate the wetlands in its Survey Plan, the existence of which Defendant Ryan Homes had reason to know," (First Am. Compl. ¶ 36); (2) sold Plaintiffs "property free of wetlands, when, in fact, it was not true," (*id.* ¶ 37); and (3) "warranted that the property would be in compliance with applicable zoning regulations when, in fact, such compliance was discovered to be false." (*Id.* ¶ 38.) Further, Plaintiffs alleged that Defendants committed unconscionable acts or practices in failing to disclose the presence of wetlands on the property. (*Id.* ¶¶ 47–51.)

The first two alleged deceptive acts or practices clearly concern the real property, and the presence of wetlands on the real property, and are therefore outside the scope of the OCSPA. Inasmuch as these allegations concern "pure" real estate transactions, the court does not reconsider its prior decision. The same holds for Plaintiffs' allegations of unconscionable acts or practices–they concern the real property only. In their Motion, Plaintiffs focus on the third alleged deceptive act or practice–Defendants' failure to comply with local zoning ordinances and federal law in constructing the home. Plaintiffs specified two violations. First, Plaintiffs alleged that the home was built in violation of local zoning regulations because "it was built within the 30-foot buffer zone adjacent to a designated wetland." (*Id.*) Second, Plaintiffs alleged that Federal law required Defendants to "specifically note the wetland boundaries on Plaintiff's property." (*Id.*)

Upon careful review of Plaintiff's Motion, this court's prior Order, and the applicable case law, the court finds that Plaintiffs' argument is well-taken and that reconsideration of the court's

prior dismissal of Plaintiffs' OCSPA claim under Ohio R.C. § 1345.02 is warranted in order to correct clear error. Plaintiffs' OCSPA claim survives but only to the extent that it is based on allegations that the construction of the house was in violation of applicable zoning laws because the construction encroaches upon wetlands.

In their Reply to Plaintiffs' Opposition to their Motion to Dismiss, the Defendants also argued that even assuming the OCSPA applies to Plaintiffs' claim, their claim nevertheless fails because Plaintiffs have failed to adequately plead a misleading or deceptive act. (Defs.' Reply at 3, ECF No. 16.) However, in interpreting the OCSPA, the Sixth Circuit has held that "[w]hen determining whether an act or practice is deceptive, the court views the incident from the consumer's standpoint." *Doe v. SexSearch.com*, 551 F.3d 412, 418 (6th Cir. 2008) (citing *Chestnut v. Progressive Cas. Ins. Co.*, 850 N.E.2d 751, 757 (Ohio Ct. App. 2006)). Thus, it is irrelevant whether "the supplier intended to be unfair or deceptive." *Walker v. Dominion Homes, Inc.*, 842 N.E.2d 570, 578 (Ohio Ct. App. 2005). *See also Funk v. Montgomery AMC/Jeep/Renault*, 586 N.E.2d 1113, 1119 (Ohio Ct. App. 1990) (noting that violation of Ohio R.C. § 1345.02 "does not require either intent or knowledge on the part of the alleged perpetrator"). Ohio courts have described the test "as one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract." *Chestnut*, N.E.2d at 758 (quoting *Mannix v. DCB Serv., Inc.*, No. 19910, 2004 WL 2848921, at *3 (Ohio Ct. App. Nov. 24, 2004)). Rather, an "act or practice is deceptive if it 'has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts.'" *Walker*, 842 N.E.2d at 578 (quoting *Lee v. C.D.E. Home Inspection Co., Inc.*, No. 00AP-516, 2002 WL 1938248, at *5 (Ohio Ct. App. Aug. 22, 2002)). Further, an act or practice is unfair "if it is marked by injustice, partiality, or deception, or it results in inequitable business dealings." *Id.*

(quoting *Saraf v. Maronda Homes, Inc.*, No. 02AP-461, 2002 WL 31750249, at *6 (Ohio Ct. App. Dec. 10, 2002)). Whether an act or practice is unfair or deceptive "is an issue of fact to be decided from all the relevant facts and circumstances in the particular case." *Mannix*, 2004 WL 2848921 at *3 (citing *Swiger v. Terminix Int'l Co. L.P.*, No. 14523, 1995 WL 396467, at *5(Ohio Ct. App. June 28, 1995)). Thus, the court finds that the absence of allegations that would support the inference that Defendants intended to mislead or deceive Plaintiffs is not fatal to Plaintiffs' OCSPA claim under Ohio R.C. § 1345.02.

### *2. Plaintiff's "Fraud and Misrepresentation" Claim*

In dismissing Plaintiff's fraud claim, the court held that Plaintiffs failed to allege properly that Defendants owed them a duty that is separate from the terms of the contract, and moreover, even assuming Plaintiffs pled a separate basis for their fraud claim, they failed to allege any facts that would raise a plausible inference that Defendants had prior knowledge of the existence of wetlands on Plaintiffs' property. Plaintiffs now move for reconsideration, arguing that: (1) their claim for fraud is not based on a duty created by contract, but rather on "the misrepresentation of a material fact, which, prior to having a contract, induced the Plaintiffs to enter into such a contract"; and (2) Plaintiffs' allegations support the inference that Defendants had knowledge of the existence of wetlands on Plaintiffs' property and therefore owed Plaintiffs a duty to disclose that fact. (Pls.' Mem. in Supp. at p. 16.)

Although Plaintiffs continue to maintain that they are pursuing a traditional fraud claim, it is now apparent to the court that Plaintiffs are in actuality asserting a fraudulent inducement to contract claim. Although under Ohio law, the elements of fraud and fraud in the inducement are

-10-

essentially the same,[1] the claims are distinct in that the fraud in a fraud in the inducement claim "'relates not to the nature or purport of the [contract], but to the facts inducing its execution.'" *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998) (quoting *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990)).  Thus, as this court has noted elsewhere, a fraud in the inducement claim can generally be maintained alongside a breach of contract claim. *King v. Hertz Corp.*, 1:09-CV-2674, 2011 WL 1297266, at *3 (N.D. Ohio. Mar. 31, 2011) (noting that because "common-law duty not to deceive a party into entering the contract or agreement is . . . independent and separate from a duty not to breach a contractual obligation . . . Plaintiff can maintain a fraud claim based on a theory of fraud in the inducement or promissory fraud alongside his breach of contract claim").

However, even if the court were to overlook the imprecision in Plaintiffs' pleading and construe Plaintiffs' claim solely as a fraud in the inducement claim, Plaintiffs' claim would nevertheless fail because as the Ohio Supreme Court has explained, a claim of fraudulent inducement "asserts that a misrepresentation of facts *outside the contract or other wrongful conduct* induced a party to enter into the contract." *ABM Farms, Inc.*, 692 N.E.2d at 578 (emphasis added). As in *ABM Farms, Inc.*, the Plaintiffs in this case "make[] no allegations about misrepresentations of facts outside the contract." *Id.*  Rather, the alleged misrepresentation concerns a contractual term. (*See* Am. Compl. ¶ 63 ("[U]nder the Agreement, as provided in the Ohio Addendum to Purchase

---

[1] The plaintiff must establish: (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at issue, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately caused by that reliance. *Gentile v. Ristas*, 828 N.E.2d 1021, 1033–34 (Ohio Ct. App. 2005) (citing *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998)).

-11-

Agreement, Defendant RYAN HOMES failed, intentionally, recklessly or otherwise, to indicate that the property which it sold to Plaintiffs contained wetlands.") Consequently, the court finds no clear error warranting reconsideration in its prior decision dismissing Plaintiffs' fraud claim.

### B. Plaintiffs' Motion to Amend

Plaintiffs also seek leave from this court to file a Second Amended Complaint. In its November 5, 2010 Case Management Conference Order, the court granted the parties forty-five (45) days after the court's ruling on Defendants' Motion to Dismiss (ECF No. 6) to join parties and/or amend the pleadings. (Case Management Order, ECF No. 17.) The court ruled on the Motion to Dismiss on August 9, 2011, (Order ECF No. 22), and Plaintiffs filed their Motion to Amend on September 6, 2011, within the 45-day period. The parties are currently engaged in discovery and have not yet filed summary judgment motions. Under these circumstances, the court does not find that Defendants would be unduly prejudiced by a grant of leave to amend.

In their proposed pleading (Proposed Second Am. Compl., ECF No. 25), Plaintiffs seek to amend their Complaint in the following ways: (1) limiting their OCSPA claims to allegations concerning the construction of the home; (2) adding a claim for rescission of the purchase agreement with Defendants; (3) and adding claims for negligence and loss of consortium based on Plaintiff Linda Stalvey's Graves' disease, which Plaintiffs allege she contracted because Defendants exposed her to adverse environmental agents on the property. Defendants oppose the Motion, and argue that the leave to amend should be denied because: (1) the proposed Complaint asserts the same OSCPA and fraud claims that the court had already dismissed; (2) Plaintiffs' proposed additional tort claims, based on Defendants' alleged negligence in exposing Plaintiffs to unidentified environmental agents, would not survive a motion to dismiss, and thus it would be futile to grant Plaintiffs leave.

Plaintiffs reassert their OCSPA claims (Counts One and Two), pursuant to Ohio R.C. § 1345.02–03. The proposed Complaint omits allegations concerning the Defendants' failure to delineate the presence of wetlands on Plaintiffs' property and limits the claim to allegations concerning the construction of the home, which Plaintiffs allege was built in violation of Montville Township Zoning regulations and federal law. (Proposed Second Am. Compl. ¶ 47.) As the court held above, Plaintiffs can proceed with their OCSPA claim to the extent that the claim is limited to the construction of the home. The proposed Complaint has limited the OSCPA claims accordingly, omitting allegations that Defendants violated the OCSPA in failing to delineate the existence of wetlands on the real property.

Plaintiffs reassert their breach of contract claim (Count Three); this claim survived Defendants' Motion to Dismiss. Plaintiffs, however, propose an alternative claim for a relief, Count Four, which seeks rescission of the contract based on mutual mistake. In *Reilley v. Richards*, the Ohio Supreme Court held that rescission of a real estate purchase contract is an appropriate remedy "where there was a mutual mistake as to the character of the real estate that was material to the contract and where the complaining party was not negligent in failing to discover the mistake." 632 N.E.2d 507, 508 (Ohio 1994). In *Reilley*, both parties testified at trial that at the time of contracting, they were unaware that the property was in a flood hazard area designated by the Federal Emergency Management Agency. *Id.* at 509. In holding that rescission of contract was a proper remedy under the circumstances, the court considered § 152 of the Restatement (Second) of Contracts (1981). Under § 152,

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made had a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1981).

In their Opposition to Plaintiffs' Motion to Amend, Defendants, in a footnote, appear to object on futility grounds, arguing that "Plaintiff's claim for a rescission remedy would in all events be unavailable. Plaintiffs have acknowledged that they have a remedy at law, and further would not [be] entitled to rescind a transaction years after it had gone through, which remedy would, among other things, create an unfair and improper windfall." While Defendant is correct that a claim for damages is inconsistent with a claim for rescission and that Plaintiffs must ultimately elect one of two remedies, the Federal Rules of Civil Procedure permit pleading in the alternative. Fed. R. Civ. P. 8(a)(3). *See also Williams v. Banner Buick, Inc.*, 574 N.E.2d 579, 582 (Ohio 1989) (holding that OSCPA requires an aggrieved consumer to either rescind the transaction or sue for damages, and that this election must occur prior to trial). The court finds that at this juncture, application of the election of remedies doctrine to the instant case would be premature. Defendants, however, may challenge that legal sufficiency of Plaintiffs' rescission claim in a subsequent Motion to Dismiss, if they so desire.

Plaintiffs also reassert their "Fraud and Misrepresentation" claim in Count Five of their proposed Complaint. The proposed Complaint, however, does not cure the deficiencies that the court has previously identified with respect to this claim, and thus the doctrine of the law of the case would compel dismissal of this claim in the event of a future motion to dismiss. *See United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) ("Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.") In particular, Plaintiffs have not adequately pleaded a misrepresentation of facts outside of the contract or other wrongful conduct that induced them to execute the contract with Defendants.

Nor have Plaintiffs pleaded their fraudulent inducement claim with the particularity required by Fed. R. Civ. P. 9(b) for fraud claims.

Lastly, Plaintiffs' proposed Complaint raises a new claim for negligence based on Plaintiff Linda Stalvey's recently developed Graves' disease, which Plaintiffs allege she contracted as a result of Defendants' negligence in exposing her to "adverse environmental agents and elements that are dangerous to her health." (Proposed Second Am. Compl. ¶ 91.) Further, in their proposed Count Seven, Plaintiffs raise a derivative loss of consortium claim, based on allegations that as a result of Defendants' negligence, Plaintiff Mr. Stalvey "no longer receives the same love, care, affection, services, society, companionship and compassion as he enjoyed from Plaintiff Linda." (Proposed Second Am. Compl. ¶ 101.) Plaintiffs note that their toxic tort claim was not previously asserted because "Plaintiff Linda's diagnosis of Graves' Disease did not occur until October 2010, subsequent to the initial filing of the complaint on July 26, 2010 in the Medina County Court of Common Please [sic] and the filing of the amended complaint on September 9, 2010." (Pls.' Reply at p. 10, ECF No. 27.)

Although there are significant issues regarding whether Plaintiffs' negligence claim would survive a motion to dismiss in light of Plaintiffs' general allegations that Plaintiff Mrs. Stalvey was exposed to unidentified environmental agents and that Mrs. Stalvey contracted Graves' disease as a result of her exposure to said agents, because the court grants Plaintiffs' leave to modify their OCSPA claim and raise a rescission claim, the court need not rule on the legal sufficiency of the proposed negligence claim at this juncture. Defendants may pursue grounds for dismissal in a subsequent motion to dismiss or for summary judgment, if they so desire.

## IV. CONCLUSION

For the above-mentioned reasons, the court hereby grants in part and denies in part Plaintiffs' Motion to "Alter or Amend Judgment, for Relief from Judgment or Order" under Fed. R. Civ. P. 59(e) & 60(b)(6) and for Leave to File a Second Amended Complaint. (ECF No. 24.) The court modifies its prior Order foreclosing Plaintiffs' OCSPA claim and grants Plaintiffs leave to file their proposed Second Amended Complaint (ECF No. 25). In light of the court's ruling on Plaintiffs' Motions, the court hereby extends the discovery period until April 16, 2012. Plaintiffs shall identify any experts and produce any expert reports regarding their negligence claim by February 15, 2012. Defendant shall file any opposing expert reports by March 15, 2012. Dispositive motions are due on May 15, 2012. Finally, in light of the amended pretrial deadlines, Plaintiffs' Motion for Extension of Discovery Period (ECF No. 33) is dismissed as moot.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

January 9, 2012